FREDERICK KLINKER, Appellant, *v.* THE THIRD AVENUE RAILROAD COMPANY, Respondent.

G. WASHBOURNE SMITH, Appellant.

*Appeal — the insolvency of the plaintiff will not justify his restraint from the use of money paid him on a judgment from which the defendant has perfected an appeal.*

Where, after the amount of a judgment for the plaintiff, affirmed upon appeal, has been paid to his attorney and deposited in bank, an application of the defendant for leave to appeal to the Court of Appeals is granted and the appeal is perfected by the defendant, the latter is not entitled to obtain by motion, upon proof that the plaintiff is insolvent, an injunction restraining the plaintiff and his attorney from drawing, and the bank from paying out, the money so deposited therein, until the further order of the court.

*Quære,* as to the right of the defendant to maintain an action to restrain the withdrawal and delivery of the money.

APPEAL by the plaintiff, Frederick Klinker, and by G. Washbourne Smith, the plaintiff's attorney, from an order of the Supreme Court, made at the Kings County Special Term, bearing date the 20th day of June, 1898, and entered in the office of the clerk of the county of Queens, restraining the plaintiff and his attorney from drawing from the National Park Bank a sum of money representing the amount of the judgment obtained by the plaintiff against the defendant, and also restraining the said bank from paying out said money until the further order of the court.

*G. Washbourne Smith,* for the appellants.

*Herbert R. Limburger* [*Francis H. Boland* and *Samuel S. Slater* with him on the brief], for the respondent.

HATCH, J.:

The plaintiff recovered a judgment against the defendant for damages inflicted arising out of the negligence of the defendant. From that judgment the defendant appealed to this court, where the judgment was unanimously affirmed. Thereafter a motion was made for a reargument of the appeal, or for leave to appeal to the Court of Appeals. The motion for a reargument was denied and leave to appeal was refused. Thereupon the defendant applied to the chief judge of the Court of Appeals for leave to appeal to that court. Pending the consideration of the application by the chief judge, the defendant paid the judgment to the attorney for the plaintiff, who received and deposited the same in the National Park Bank. Thereafter the application for leave to appeal to the Court of Appeals was granted by the chief judge, and such appeal was duly perfected. Thereupon the defendant moved, upon papers setting forth the proceedings had, and showing that the plaintiff was insolvent, for an injunction restraining the plaintiff and his attorney from drawing the money from the National Park Bank where the money paid was deposited, and also restraining the bank from paying out the same. This application resulted in granting the order, and such order is now the subject of this appeal.

By the provisions of section 1323 of the Code of Civil Procedure, a party may compel restitution of money paid upon a judgment, where the rights of third parties have not intervened, when such judgment has been reversed or modified. The appellate court is authorized in such case to compel restitution. In the present case, however, the judgment, while paid, has neither been reversed nor modified, nor is there any presumption that it will be ; consequently there is nothing in the provisions of this section under which the party acquires the right to move for, or the court derives power to compel, restitution of the money paid upon the judgment. It was the right of the defendant to pay the judgment, and thereby it did not waive the right to prosecute any proceeding to secure leave to appeal, or to appeal upon leave being granted. The right remains to have the appeal considered as though no payment had been made. (*Hayes v. Nourse,* 107 N. Y. 577.) But the provisions of the Code do not give the right to compel restitution of the money paid pending the appeal. The right to prosecute an appeal is one thing, authority

to compel restitutition is quite another. There certainly exists no statutory authority in this case to compel restitution or to enjoin the plaintiff, his attorney or the bank, from receiving and using the money which has been paid. It is claimed, however, that such authority resides in the general equitable powers of the court, and as it appeared that the plaintiff was insolvent, such power was properly invoked. The moment the judgment was paid the money became the property of the plaintiff. So far as property right was concerned, his interest therein was absolute. The defendant had no right or interest, but the same became subject to the control and disposition of the plaintiff in the fullest extent to which he could make lawful use of the same. Thereafter the defendant had no interest in the money until it had established some legal right by a subsequent act. The appeal in no wise affected this status; the judgment still remained in full force, unaffected thereby, and such status could not be changed until some change was effected which impaired the force and validity of the judgment. (*Bank of the United States* v. *Bank of Washington*, 6 Pet. 8, 15.) When the defendant paid the money it understood the effect of the judgment and it chose voluntarily to make payment. No fraud or coercion attended upon the transaction; what was done was done voluntarily, and no right existed to recover the money back so long as there was no change. (*New York & Harlem R. R. Co.* v. *Marsh*, 12 N. Y. 308; *Flynn* v. *Hurd*, 118 id. 19.) Having paid voluntarily, and the plaintiff having acquired perfect title to the money paid, and there having been no change in the binding force of the judgment, by what authority can the court intervene and limit the plaintiff's property right? The assumed authority which granted the order is claimed to be based upon an equitable principle having the sanction of authority. In principle we are unable to see how equity can lay hold of this application. The parties stand entirely upon their legal rights. The right of the plaintiff was to have the fruits secured by the judgment. The defendant recognized the right and paid over the fruit in obedience to the mandate of the judgment, and to such mandate alone. In respect of the right thus vested in the plaintiff and recognized by the defendant, there has not been the slightest change. The mere right to appeal and review a money judgment never conferred authority upon the appellant to refuse payment of the judgment or resist

compulsory process to enforce it. It required the intervention of other matters to resist the right of the judgment creditor in its collection. How, then, can there be authority upon a mere motion to defeat the plaintiff's right to the use and enjoyment of the property which the judgment commanded should be paid, and which the defendant voluntarily complied with by payment? We can find no equitable principle which gives such efficacy to the service of a notice of appeal. The subsequent execution of a bond cannot change the result; this in no wise affected the property right of the plaintiff in the money paid, nor can title to property be limited by any such proceeding. A bond may delay the issuing of an execution, but there is no provision of law, of which we know, that endows it with virtue sufficient to change or modify the title to property which has vested and been reduced to possession. Under such circumstances the property is the property of the owner, and in the absence of some statute the owner's property right cannot be affected by the execution and delivery of a bond, without assent upon the part of the owner. Stays of proceedings have at all times been the subject of statutory provision. Under the old practice the allowance of a writ of error operated as a stay. (2 R. S. 596, § 29.) But this was not effectual if the money had been collected upon execution. It only operated upon an execution so far as it remained unexecuted. (Id. § 30.) Where the appeal had not been perfected, but was subsequent to the issue and levy of an execution, it was held that the Court of Chancery possessed discretion to discharge the levy of the execution and restore the property upon the execution and approval of a bond. (*Clark v. Clark*, 7 Paige, 607.) The practice was subsequently regulated by Code provision, but under the provisions of the old Code it was held that filing a proper undertaking did not have the effect of superseding an execution previously levied. (*Cook* v. *Dickerson*, 1 Duer, 679.) Nor does the appeal and undertaking stay an action previously commenced upon an undertaking given upon appeal. The remedy was by motion to stay until the decision of the appeal. (*Burrall* v. *Vanderbilt*, 1 Bosw. 637; *Bowman* v. *Cornell*, 39 Barb. 69.) The present Code of Civil Procedure (§ 1311) provides for discharging a levy made upon execution where an undertaking sufficient to procure a stay has been subsequently

executed. This section is new, and was made to assimilate the practice which obtained respecting the suspension of the lien of judgments upon real property. (Throop's Code Civ. Proc. § 1311, and note.) But neither under the old nor modern practice has provision ever been made for the restitution of money collected upon a judgment by virtue of an execution, nor are we able to find a case where the court has interfered in limitation of the respondent's rights to the use of the money collected or paid upon a judgment prior to the filing of an undertaking which operates as a stay. The defendant in the present instance was not without remedy. It could have applied to the court for a stay of proceedings pending the application to the chief judge of the Court of Appeals, and this court, in the exercise of the power which it has over its judgments, could and frequently has granted a stay pending the result of such application. The cases relied upon in the court below do not support the order which it made. In *Forstman* v. *Schulting* (108 N. Y. 110) the order under which the attorney had obtained the costs was reversed upon appeal, and the order of reversal directed the repayment of the money ; this not having been complied with, the court enforced restitution. So far as the opinion discussed the general powers of the court to compel restitution, it limited its observations to a case where property had been wrongfully acquired or unjustly retained. The present case answers neither description. In *Marvin* v. *The Brewster Iron Mining Co.* (56 N. Y. 671) there had been a reversal of the judgment appealed from, and in view of the insolvency of the appellant and pecuniary inability to pay the judgment in case the respondent should be successful upon a new trial, it was held that restitution might be refused and the money held to await the final result of the action. In that case the determination of the court, while taking the form of a reversal of the judgment, was in reality a limitation upon the right of recovery, and probably did not defeat the right to some relief. *Badger* v. *Appleton* (12 N. Y. Civ. Proc. Rep. 93) was a reversal, and adds nothing to the strength of the last case upon which it was substantially based. In *Britton* v. *Phillips* (24 How. Pr. 111) there had been a reversal upon appeal and a new trial ordered. The money secured by the judgment had been collected, and the respondent was directed to pay the money into court to await the result of the new trial.

In *Haebler* v. *Myers* (132 N. Y. 363), relied upon by respondent, the money was held by the sheriff by virtue of an attachment; subsequent lienors procured an order restraining the sheriff from paying the money to the attaching creditors; upon motion the attachment was vacated and the money was paid over to the lienors. Subsequently the order vacating the attachment was reversed and execution issued upon a judgment obtained in that action was returned unsatisfied. Demand was thereupon made upon the lienors for the money, which was refused, and action was begun thereafter. The court held that plaintiff was entitled to recovery upon the theory that the lienors were compelled to make restitution. (*Pitts-field National Bank* v. *Bayne* (140 N. Y. 321) adds nothing to the strength of the respondent's position. In that case there had been a reversal of an order under which money had been paid, and restitution was directed. Those are the cases relied upon ; they all proceed upon well-settled principles, but are inapplicable to the case at bar, for reasons which we have already sufficiently stated. Whatever right, if any, defendant may have to maintain an equitable action, brought to restrain the delivery of this money, we think it is not entitled to relief by this motion, and we do not decide that it is entitled to any relief short of a reversal or modification of the judgment upon appeal.

The order should, therefore, be reversed, with ten dollars costs and disbursements.

All concurred.

Order reversed, with ten dollars costs and disbursements.